649 So.2d 75 (1994)
George L. MIKELL
v.
HOFFMAN-LaROCHE, INC., et al.
No. 94 CA 0242.
Court of Appeal of Louisiana, First Circuit.
December 22, 1994.
*76 Keith D. Jones, Baton Rouge, for plaintiff-appellant, George L. Mikell.
Brent A. Talbot, New Orleans, for defendant-appellee, Hoffman-LaRoche, Inc.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment granting a motion for summary judgment in favor of a drug manufacturer in a product's liability action.

FACTS
In early March of 1984, plaintiff George L. Mikell sought treatment for acne from Dr. Thomas W. Graves, a dermatologist. Dr. Graves prescribed for plaintiff the prescription medication Accutane, which is manufactured by Hoffman-LaRoche, Inc. (Hoffman). The administration of Accutane was discontinued on several occasions by Dr. Graves because of various side effects experienced by plaintiff. Plaintiff last took Accutane in November of 1984. Thereafter, plaintiff suffered gastrointestinal problems and was diagnosed with inflammatory bowel disease, more particularly, ulcerative proctitis.
On June 4, 1986, plaintiff filed suit against Hoffman, alleging that Accutane is an unreasonably dangerous product, that Hoffman *77 failed to disclose the risk of developing ulcerative proctitis from Accutane use, and that Hoffman failed to give adequate warnings regarding the use of Accutane.[1] No further action was taken in the case until nearly five years later when, on February 21, 1992, Hoffman filed a motion to compel responses to certain interrogatories which had been served upon plaintiff on January 26, 1987.
On March 6, 1992, Hoffman filed an answer generally denying plaintiff's allegations and asserting that (1) plaintiff was contributorily negligent; (2) that there was an intervening cause; (3) that Hoffman had no duty to warn plaintiff directly; (4) that warnings are required to be made to the physician/health care provider who acts as a "learned intermediary" in deciding on the use/administration of such medication; (5) that its methods used in the preparation of Accutane were in conformity with the generally recognized state-of-the-art at the time of preparation; and (6) that Accutane, as prepared and provided by Hoffman, has been approved by the appropriate federal agencies.
On September 29, 1992, Hoffman filed a motion for summary judgment, claiming that there were no genuine issues of material fact in dispute and that it was entitled to judgment as a matter of law. In its memorandum in support of the motion for summary judgment, Hoffman asserted that plaintiff's condition was not caused by the use of Accutane and that Hoffman had provided an adequate warning by informing a learned intermediary (Dr. Graves) of the risks associated with the use of Accutane. Attached to the motion for summary judgment were the following documents:
(1) Affidavit of Dr. Graves;
(2) Dr. Graves's notes for the period of November 1984 through June 1985;
(3) A colonoscopy report from Dr. Barry Scott;
(4) A copy of the 1992 Physician's Desk Reference with regard to certain drugs which had been taken by plaintiff during the same period in which he had taken Accutane;
(5) Other medical records regarding plaintiff's treatment.
Dr. Graves's affidavit stated that plaintiff's last use of Accutane was on November 15, 1984. An attached report of a Barium Enema study and a proctoscopic exam performed on November 27, 1984, revealed normal results. The affidavit also stated the following: (1) that from January 8, 1985, through April 23, 1985, plaintiff had no gastrointestinal complaints or symptoms; (2) that, during the period of January of 1985 through April 23, 1985, plaintiff was prescribed medications other than Accutane; (3) that on or about August 1, 1985, plaintiff was taking Azulfidine for treatment of colitis; (4) that the attached medical records reflected that plaintiff's complaints at the time of the colonoscopy on June 26, 1985, consisted of persistent diarrhea with blood in the stool and pus cells; (5) that, if plaintiff developed colitis and/or ulcerative proctitis in the summer of 1985, it was not causally related to the ingestion of Accutane prior to or on November 15, 1984, as supported by the attached medical records; (6) that he is familiar with Accutane and has treated patients prior to and subsequent to plaintiff with Accutane; and (7) that the contraindications, warnings, precautions, and adverse reaction information which he received accompanying Accutane were adequate for his weighing of the risks against the benefits in prescribing Accutane for plaintiff.
In opposition to Hoffman's motion for summary judgment, plaintiff filed an affidavit, stating that, when he was first prescribed Accutane, he was provided with a brochure which did not disclose the risk of inflammatory bowel disease. Plaintiff also stated that, after he discontinued use of Accutane, he obtained a copy of a patient brochure, which *78 was released sometime after he had received the first brochure, disclosing risks of "severe stomach pain, diarrhea, [and] rectal bleeding." Copies of both brochures were also attached to plaintiff's memorandum in opposition to the motion for summary judgment.
On November 13, 1992, a hearing was held on Hoffman's motion for summary judgment. After argument of counsel, the trial judge denied the motion, but stated that the motion could be re-urged with additional evidence concerning Hoffman's warnings of the association between Accutane and inflammatory bowel disease. On June 16, 1993, Hoffman filed a supplemental motion for summary judgment. Attached to the motion were the affidavit of Mack R. Mericle, Group Director in the Department of Drug Regulatory Affairs for Hoffman, together with various attachments, and the affidavit of Dr. Graves.
In his affidavit, Mericle stated that he is familiar with warnings and other information disseminated by Hoffman regarding Accutane. According to Mericle, on August 25, 1983, Hoffman mailed to every physician in the United States a "Dear Doctor" letter, advising all physicians, among other things, that it had received reports of inflammatory bowel disease in association with the administration of Accutane and that, attached to the letter, was a revised package insert which reflected the fact that Hoffman had received such reports. The August 1983 letter and package insert were attached to Mericle's affidavit as Exhibit A. Mericle indicated that, in February of 1984, the annual Physicians' Desk Reference ("PDR") was distributed to physicians in the United States and that the 1984 PDR entry for Accutane includes a warning regarding the association between Accutane and inflammatory bowel disease. The 1984 PDR entry for Accutane was attached to Mericle's affidavit as Exhibit B.
In his affidavit, Dr. Graves stated the following: (1) that he is a physician licensed to practice medicine in Louisiana, specializing in dermatology; (2) that he prescribed Accutane to plaintiff for the treatment of acne beginning on March 16, 1984; (3) that, on or before March 16, 1984, he was aware of the 1984 PDR and the product information on Accutane contained therein; (4) that he was aware of the 1984 package insert, as published on page 1617 in the 1984 PDR, which states: "The following reactions have been reported in less than 1% of patients and may bear no relationship to therapy ... inflammatory bowel disease (including regional ileitis), mild gastrointestinal bleeding ..."; (5) that he was aware that inflammatory bowel disease includes colitis and/or ulcerative proctitis; and (6) that he used all of this information in assessing the risks of prescribing Accutane to plaintiff in March of 1984 and that the contraindications, warnings, precautions, and the adverse reaction information provided to him adequately apprised him of the drug's risks and benefits.
On October 1, 1993, a hearing was held on the second motion for summary judgment. After considering the law, evidence, and argument of counsel, in his oral reasons for judgment, the trial judge stated:
Of course, as I appreciate it, the duty of the drug company is not to warn patients but to warn the doctors so that they can make a decision as to whether or not they should or should not use a particular drug.
I think the affidavit is sufficient.
Accordingly, the trial court granted Hoffman's motion for summary judgment and dismissed, with prejudice, plaintiff's claims against Hoffman.
From this adverse judgment, plaintiff appealed, assigning the following specifications of error:
1. The trial court erred in finding that summary judgment was appropriate under the facts presented.
2. The trial court erred in finding that there was no issue of material fact as to the warnings given, as perceived by plaintiff's treating physician, Dr. Graves.
3. The trial court erred in granting summary judgment to the defendant on the basis of an affidavit by the plaintiff's former treating physician while denying plaintiff an opportunity to take the physician's deposition.

*79 SUMMARY JUDGMENT

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d 1115, 1120 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C. art. 966; Thompson v. South Central Bell Telephone Company, 411 So.2d 26, 27 (La. 1982); Legros v. Norcen Exploration, Inc., 583 So.2d 859, 860 (La.App. 1st Cir.), writs denied, 588 So.2d 101, 109 (La.1991).
A fact is material if it is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989).
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Robertson v. Our Lady of Lake Regional Medical Center, 574 So.2d 381, 383-84 (La. App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). To satisfy this burden, the mover must meet a strict standard by showing that it is quite clear as to what the truth is and excludes any real doubt as to the existence of material fact. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120. The court must closely scrutinize the papers supporting the position of the mover, while the papers of the party opposing the motion are to be treated indulgently. Ortego v. Ortego, 425 So.2d 1292, 1297 (La.App. 3rd Cir.1982), writ denied, 429 So.2d 147 (La.1983).
Summary judgments are not favored and should be used cautiously and sparingly, and any reasonable doubt should be resolved against the mover. Penalber v. Blount, 550 So.2d at 583; Hollis v. City of Baton Rouge/Parish of East Baton Rouge, 593 So.2d 388, 389 (La.App. 1st Cir.1991). In determining whether material facts have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). This is true even if grave doubt exists as to a party's ability to establish disputed facts at trial. Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068, 1070-1071 (La.App. 3rd Cir.1985). Where the trial court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits, and depositions, the reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Jones v. Briley, 593 So.2d 391, 393 (La.App. 1st Cir.1991).
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, Division of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir.1988).

DUTY TO WARN
Generally, a drug manufacturer has no duty to warn the consumer directly of any risks or contraindications associated with its product. The obligation to the consumer is fulfilled when the prescribing or treating physician is informed of any potential side effects or risks from the drug's use so that they may intelligently decide on its use and advise the patient. Rhoto v. Ribando, 504 So.2d 1119, 1123 (La.App. 5th Cir.), writ *80 denied, 506 So.2d 1225 (La.1987); Kinney v. Hutchinson, 468 So.2d 714, 717 (La.App. 5th Cir.), writ denied, 472 So.2d 35 (La.1985); Cobb v. Syntex Laboratories, Inc., 444 So.2d 203, 205 (La.App. 1st Cir.1983). The doctor acts as an informed intermediary, and the decision to use the drug in a particular circumstance rests with the doctor and the patient, not the manufacturer. Rhoto v. Ribando, 504 So.2d at 1123; Kinney v. Hutchinson, 468 So.2d at 717-18; Cobb v. Syntex Laboratories, Inc., 444 So.2d at 205.
In Cobb v. Syntex Laboratories, Inc., 444 So.2d at 205-206, in affidavits to support a motion for summary judgment, the plaintiff's physicians stated that they had received and reviewed the material supplied by the manufacturer of birth control pills and that they considered the warnings adequate. The trial court concluded that, under those circumstances, the plaintiff's physicians were sufficiently warned of the side effects and risks of the drug. Accordingly, the trial court determined that the defendant drug manufacturer had discharged its obligation. In affirming the trial court judgment, this court determined that the record supported the trial judge's conclusion that the physicians had been adequately warned by the manufacturer and that the manufacturer breached no duty in that respect.
In the instant case, we have thoroughly reviewed the affidavits and exhibits thereto of Dr. Graves and Mericle. The "Dear Doctor" letter advised that "[n]ew clinical adverse reaction information has been added to this section [Adverse Reactions Section], including the occurrence of ... inflammatory bowel disease...." The PDR clearly stated that "inflammatory bowel disease (including regional ileitis)" was a possible contraindication of Accutane usage. Moreover, Dr. Graves clearly stated that he was aware of the risk of inflammatory bowel disease with the administration of Accutane. The trial court concluded, and we agree, that the evidence in support of the motion for summary judgment established that, prior to prescribing Accutane for plaintiff, Dr. Graves had been informed by Hoffman of the possible side effect of inflammatory bowel disease associated with the use of Accutane. As such, Hoffman breached no duty in this respect. Therefore, we find that the motion for summary judgment was properly granted.

CONCLUSION
For the foregoing reasons, the judgment of the trial court, granting Hoffman's motion for summary judgment and dismissing plaintiff's claims against Hoffman, with prejudice, is affirmed. Plaintiff is cast for all costs on appeal.
AFFIRMED.
NOTES
[1] Plaintiff also named as defendants Dr. Thomas W. Graves and his medical corporation. On September 16, 1986, Hoffman filed dilatory exceptions pleading the objections of improper joinder and prematurity. Subsequent thereto, on June 10, 1987, plaintiff filed a motion and order for partial dismissal without prejudice, dismissing Dr. Graves and his medical corporation and reserving all rights to proceed against Hoffman. The order dismissing these two defendants was signed by the trial judge on June 10, 1987.